UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BICKES and DAVID
TREPANIER,

    Plaintiffs,

v.

SPS TECHNOLOGIES WATERFORD
COMPANY, a Michigan Corporation,

    Defendant.
    _____/

Case No. 05-71614

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
  District Courthouse, Eastern District
  of Michigan, on November 27, 2006.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On April 25, 2005, Plaintiffs filed a disability discrimination action against Defendant. Plaintiffs each allege a count of disability discrimination in violation of the Americans With Disabilities Act ("ADA")[1] and Mr. Trepanier also alleges a count of weight discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.[2] Presently before this Court is Defendant's motion for summary judgment on Plaintiffs'

---

[1] 42 U.S.C. §§ 12101-300.

[2] MICH. COMP. LAWS ANN. §§ 37.2101-2804.

1

disability discrimination claims.³ A hearing was held on this motion on November 16, 2006.

## BACKGROUND

SPS Technologies Waterford Company ("SPS") manufactures precision fasteners and engineered components for the automotive industry at its facility in Waterford, Michigan. In December of 2003, SPS was purchased by Precision Castparts Corporation. According to Defendant, this resulted in a mandate aimed at reducing costs in a variety of plant operations, including SPS's workforce. SPS's Plant Manager during this period, Jeff Bishop, instructed various Department Managers to identify positions that could be eliminated or consolidated. (Dft.'s Ex. 3, Bishop Dep. at 35-36). Two of the positions identified, and ultimately eliminated, were those held by Plaintiffs. As a result, Plaintiffs were discharged on April 29, 2004.

Plaintiff Timothy Bickes began working for Defendant on August 29, 1984. In 1987 or 1988, Mr. Bickes was diagnosed with rheumatoid arthritis, which causes pain and swelling in multiple joints. On May 29, 2001, Mr. Bickes' doctor recommended that his working conditions be modified to avoid prolonged standing. In addition, it was recommended that Mr. Bickes avoid frequent heavy lifting, repetitive motion, and work no more than five days per week. On September 16, 2003, another doctor's recommendation stated that Mr. Bickes should work no more than fifty-six hours per week and that he be moved to a position that did not involve prolonged sitting and a high

---

³Defendant indicates in their brief in support that Mr. Trepanier has agreed to voluntarily dismiss the weight discrimination claim. The Court will therefore treat this claim as dismissed.

2

level of stress. In addition to having work restrictions, Mr. Bickes has taken a variety of medications and undergone treatments, including homeopathic treatments, to control the pain associated with his arthritis.

At the time of his discharge, Mr. Bickes worked as an inventory control coordinator, which involved alternating periods of sitting, standing, and walking. After being discharged by Defendant, Mr. Bickes secured other employment. More recently, however, Mr. Bickes is unemployed and has moved to Georgia in order to avoid the cold weather, which exacerbates his arthritis.

Plaintiff David Trepanier began working for Defendant on August 3, 1988. While working for Defendant, Mr. Trepanier injured his lower back, and as a result, Mr. Trepanier has undergone three surgeries. Mr. Trepanier's doctor has also issued work restrictions that were in place at the time of his discharge. On August 10, 1999, Mr. Trepanier's doctor submitted a work restriction of "no repetitive bending, sitting or lifting of over 25 lbs." (Dft.'s Ex. 6). In addition, on February 25, 2000, Mr. Trepanier's doctor restricted him from lifting up to 40 pounds and required him to wear a lumbar support. As a result of his back problems, Mr. Trepanier has taken, and currently takes, pain medication.

At the time of his discharge, Mr. Trepanier was employed as a tool-crib technician. Like Mr. Bickes, following his discharge, Mr. Trepanier secured employment elsewhere, and it appears as of the time of filing this suit was still employed, as a substitute truck driver.

In addition to discharging Plaintiffs, other employees were also terminated.

Although the parties are in disagreement as to the total number of positions eliminated, Plaintiffs contend that some of the other discharged employees suffered from serious medical conditions.

## STANDARD OF REVIEW

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the

4

motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## DISCUSSION

The ADA protects a "qualified individual with a disability"[4] from being discharged because of their "disability." *See* 42 U.S.C. § 12112(a). To establish a prima facie case for disability discrimination through indirect evidence a plaintiff to must prove the following:

> (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.[5]

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Furthermore, when, as here, the alleged discrimination occurred as a result of a workforce reduction the final element of a prima facie case is altered and requires a plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."[6] *See Barnes v. GenCorp Inc.*,

---

[4] A "qualified individual with a disability" is defined as "an individual with a disability who, with or without, reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

[5] The Court notes that it is unclear whether Plaintiffs are seeking to establish their claims through direct or indirect evidence. Because Plaintiffs cite the indirect evidence test set forth in *Monette*, the Court will construe their claim as such. (*See* Pls.' Resp. Br. at 13-14). Furthermore, at the hearing, Plaintiffs' arguments were solely based on indirect evidence.

[6] Plaintiffs do refer to a statistic in their brief. (Pls.' Resp. Br. at 19). However, to the extent Plaintiffs are using these statistics to assert a "disparate impact" claim under the ADA, it must fail as it was not pled in their complaint and was not raised until the close of discovery and in response to a motion for summary judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d

896 F.2d 1457, 1465 (6th Cir. 1990).

Once a plaintiff establishes a prima facie case, "[t]he defendant must then offer a legitimate explanation for its action." *Monette*, 90 F.3d at 1186. "If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual." *Id.* "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

## I. Whether Plaintiffs are "Disabled" Under the ADA

Defendant argues it is entitled to summary judgment because Plaintiffs are not "disabled" within the meaning of the ADA. Determining whether an individual has a "disability" under the ADA is a "individualized inquiry." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139, 2147 (1999). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2).[7] The parties do not dispute whether

---

1271, 1294 (9th Cir. 2000)(holding, with respect to a disparate impact claim brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, that plaintiffs "were required either (1) to plead the additional disparate impact theory in their complaints, or (2) to make known during discovery their intention to pursue recovery on the disparate impact theory omitted from their complaints."). In their brief, Plaintiffs also contend that Defendants failed to provide a reasonable accommodation by not transferring or reassigning them to different positions. However, Plaintiffs cannot assert a "failure to accommodate" claim either, because by not including such a claim in their EEOC charges of discrimination they did not exhaust their administrative remedies. *See Jones v. Retirement Village*, 209 F.3d 851, 853-54 (6th Cir. 2000).

[7]In addition to having an actual disability, the ADA also defines disability as: "(B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

6

Plaintiffs' medical conditions are physical impairments[8] under the ADA. Thus, the Court must determine if Plaintiffs have presented a genuine issue of fact as to whether their medical conditions "substantially limit one or more of the major life activities. . ." *Id.*

"Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).[9] This is a non-exhaustive list, *Kiphart v. Saturn Corp.*, 251 F.3d 573, 582 (6th Cir. 2001), and the Sixth Circuit has held that lifting and sleeping are also "major life activities." *See Gerton v. Verizon South Inc.*, 145 Fed. Appx. 159, 165 (6th Cir. 2005); *Boerst v. General Mills Operations, Inc.*, 25 Fed. Appx. 403, 407 (6th Cir. 2002). Furthermore, the Supreme Court has stated that "'major life activities' . . . refers to those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 691 (2002).

As defined in the EEOC regulations, except for the "major life activity" of working,

---

12102(2). Plaintiffs' complaint is unclear in terms of which part of the "disability" definition they are claiming applies to their claims. Plaintiff Bickes' EEOC Charges of Discrimination demonstrate that he is seeking relief due to an actual disability. Plaintiff Trepanier's EEOC Charges of Discrimination, however, do include language indicative of a "regarded as" claim. Nonetheless, as described in detail below, Plaintiffs claims fail as they have not established pretext.

[8]The EEOC regulations define a "physical or mental impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine . . ." 29 C.F.R. § 1630.2(h).

[9]The Supreme Court has noted that it is unclear whether the ADA vests the EEOC with the authority to issue regulations. *See e.g., Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194, 122 S. Ct. 681, 689 (2002). In this case there is no dispute regarding the validity of the EEOC regulations and the parties rely on the regulations for support in their briefs. Therefore, the Court will assume the regulations are reasonable. *See id.*

7

"substantially limited" means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j). Furthermore, the EEOC has set forth three guiding factors to determine whether Plaintiffs' medical conditions are substantially limiting, including: "(1) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or expected permanent or long term impact of or resulting from the impairment." *Id.* Moreover, the Supreme Court has suggested that in order to be a substantial limitation an impairment must be more than a minor interference with a major life activity. *Williams*, 534 U.S. at 197, 122 S. Ct. at 691.

"[T]hese terms need to be interpreted strictly to create a demanding standard for qualifying as disabled . . ." *Id.* The Court must also take into account "measures that mitigate the individual's impairment," *Sutton*, 527 U.S. at 483, 119 S. Ct. at 2146, which means that Plaintiffs' impairments must be viewed in their "medicated – and thus substantially controlled – state[s]." *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002). Furthermore, "[t]he relevant time for determining whether a plaintiff is a 'qualified individual with a disability' is at the time of discharge." *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998) (citations omitted).

Plaintiffs' complaint does not contain allegations of which major life activities they

are claiming are substantially limited by their impairments. In response to Defendant's motion, however, Plaintiffs argue that a number of major life activities are limited by their impairments. Limiting its analysis to the major life activities described in Plaintiffs' brief and those argued at the hearing, the Court will make an individualized inquiry addressing the major life activities as they apply to Mr. Bickes and Mr. Trepanier.

**A.   Mr. Bickes**

Mr. Bickes asserts that the major life activities of walking, sitting, standing, sleeping, lifting, caring for oneself, and working are substantially limited by his arthritis.[10] With respect to walking, sitting, and standing, Mr. Bickes testified that his position as inventory control coordinator required him to stand for two and a half hours, walk for two and a half hours, and sit for seven hours per work day. (Dft.'s Ex. 1, Bickes Dep. at 62-63). In his deposition, Mr. Bickes agreed that "it was the longer continuous walks of over 300, 400 yards that were the problem," although it is unclear if he was referring to his condition as it affected him at the time of discharge.[11] (*Id.* at 122). Mr. Bickes also stated that, prior to his discharge, the application of a homeopathic treatment helped him deal with the pain associated with standing and walking. (*Id.*). Finally, Mr. Bickes stated that "when I was at SPS my condition was stable and doing good." (*Id.* at 52).

---

[10]Mr. Bickes also asserts that he is substantially limited in his ability to engage in sports or athletic activities with his children. The Court does not believe these activities are of central importance to Mr. Bickes' daily life. *Williams*, 534 U.S. at 197, 122 S. Ct. at 691; *see also Amann v. Potter*, 105 Fed. Appx. 802, 806 (6th Cir. 2004)(finding that playing tennis was not a major life activity).

[11]The Court notes that it is apparent from the record that Mr. Bickes' condition has declined since he was employed with Defendant. However, the Court must view the impairment as it existed at the time of his discharge. *See Griffith*, 135 F.3d at 380.

9

The Court is not persuaded that Mr. Bickes has presented significant probative evidence from which a reasonable juror could find that he is substantially limited in the major life activities of walking, sitting, and standing. The Sixth Circuit has stated that "[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997). Thus, according to Mr. Bickes testimony, his ability to walk, sit, and stand was not substantially limited at the time of his discharge.

With respect to sleeping, Mr. Bickes stated that in April of 2004 his sleep was interrupted every two to three hours when he would awake and experience pain for ten to fifteen minutes before falling back asleep. (Dft.'s Ex. 1, Bickes Dep. at 123). The Sixth Circuit has stated that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. Gen. Mills Operations, Inc.*, 25 Fed. Appx. 403, 407 (6th Cir. 2002). Mr. Bickes testimony, however, reveals that he was able to sleep more than two hours a night. Consequently, the inconvenience he experienced does not rise to the level of a disability.

Mr. Bickes also argues that his impairment caused substantial limitations in his ability to care for himself. In his deposition, Mr. Bickes agreed that he was generally able to care for himself, including brushing his teeth and hair, cooking dinner, packing his children's lunch, doing the dishes, and vacuuming. (Dft.'s Ex. 1, Bickes' Dep. at 119-21). Mr. Bickes stated that as of April 2004 he could generally dress himself, but he needed to use a shoe horn to put on his left shoe. (*Id.* at 199-20). According to the

10

record, Mr. Bickes was able to care for himself at the time he was discharged, and the difficulty he experienced putting on his left shoe was mitigated by the use of a shoe horn. Therefore, Mr. Bickes has failed to create a genuine issue of fact as to a substantial limitation in his ability to care for himself.

Mr. Bickes contends that he has lifetime restrictions in his ability to lift and that at the time of his discharge, he was able to lift very little weight.  However, Mr. Bickes fails to provide any evidence describing the effect his inability to lift has on his life outside of work, which alone is insufficient to create a genuine issue of material fact.  *See Gerton*, 145 Fed. Appx. at 165.  Furthermore, to the extent that Mr. Bickes is claiming that he is substantially limited in the major life activity of performing manual tasks, the Supreme Court has stated that "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." *Williams*, 534 U.S. at 200-01, 122 S. Ct. at 693.  Other than the lifting restrictions established by his doctor, there is no evidence on this record describing how Mr. Bickes' inability to perform the manual task of lifting limits his ability to accomplish tasks central to his daily life.

Mr. Bickes also contends that he was substantially limited in the major life activity of working.  The Supreme Court has stated:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

11

*Sutton*, 527 U.S. at 492, 119 S. Ct. at 2151. Mr. Bickes testified that at the time of his discharge he was able to perform his job and was capable, within his restrictions, of doing a number of other jobs at SPS, including shipping and receiving, clerical, production, and supervisory jobs. (Dft.'s Ex. 1, Bickes Dep. at 117-18). In addition, Mr. Bickes was able to secure employment after being discharged by Defendant. (*See id.* at 69-70). Mr. Bickes' ability to perform a number of other jobs at SPS and his ability to secure employment after his discharge demonstrate that he was not precluded from a broad range of jobs.

In this case, because Mr. Bickes has failed to create an issue of fact regarding the substantial impairment of any major life activity, summary judgment is proper on his ADA claim.

**B.    Mr. Trepanier**

Mr. Trepanier contends that the major life activities of walking, lifting, caring for oneself, and working are substantially limited by his lower back problem.[12] Like Mr. Bickes, Mr. Trepanier has failed to create a genuine issue of material fact as to whether he is substantially limited in any major life activity.

Mr. Trepanier argues that he is severely limited in his ability to walk. In his deposition, Mr. Trepanier stated that there are times when he occasionally experiences pain while walking and about once or twice a week he "is just so happy to be laying down

---

[12]Mr. Trepanier has also had a heart attack in December of 2001 (Dft.'s Ex. 2, Trepanier Dep. at 82). Mr. Trepanier, however, has failed to provide any evidence that this substantially limits him in any way.

it's unreal."[13]  (Dft.'s Ex. 2, Trepanier Dep. at 68-71).  However, as stated above, "[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability."  *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997).  Thus, Mr. Trepanier has failed to present significant probative evidence that his condition substantially limits his ability to walk.

In addition, Mr. Trepanier points to his doctor's restrictions to support his contention that he is substantially limited in his ability to lift and perform other manual tasks, such as twisting, turning, or bending at the waist.  Mr. Trepanier testified that in 2000 he specifically requested that his weight restriction be raised from twenty-five to forty pounds.  (*See* Dft.'s Ex. 2, Trepanier Dep. at 134).  Again, like Mr. Bickes, Mr. Trepanier has failed to present evidence creating a genuine issue of fact as to whether he was substantially limited in lifting or performing manual tasks.  *See Williams*, 534 U.S. at 200-01, 122 S. Ct. at 693.

With regard to caring for himself, Mr. Trepanier testified that while he was employed at SPS he was able to wash the dishes, clean the house, take out the garbage, wash his hair, and brush his teeth.  (Dft.'s Ex. 2, Trepanier Dep. at 75-77).  At the time of his discharge, Mr. Trepanier needed assistance putting on his socks and shoes.  (*Id.* at 76).  The Court does not believe that, on this record, there is a genuine issue of material fact as to whether Mr. Trepanier experienced more than a minor inconvenience in needing

---

[13] At the hearing, counsel for Mr. Trepanier argued that he was unable walk two days out of the week.  Nevertheless, the Court does not believe there is a genuine issue of fact as to whether Mr. Trepanier is substantially limited in his ability to walk.

13

assistance putting on his socks and shoes specifically, and in caring for himself generally.

Finally, with regard to working, Mr. Trepanier agreed that he could perform the tasks associated with his position as tool-crib technician "without incident." (*Id.* at 116). Furthermore, Mr. Trepanier testified that, at or around the time he was discharged by Defendant, he felt capable of performing a number of different jobs, including management, clerical, mechanic, general laborer, janitorial, maintenance, and other jobs. (*Id.* at 187-88). Furthermore, like Mr. Bickes, Mr. Trepanier was able to secure employment as a substitute truck driver following his discharge by Defendant. (*Id.* at 62-65). Mr. Trepanier's testimony reveals that he was not substantially limited in performing a "broad class of jobs." Thus, he has failed to create genuine issue of fact with respect to the major life activity of working.

## II. Whether Defendant's Reasons For Termination Were Pretext For Disability Discrimination

In addition to arguing that Plaintiffs are not disabled within the meaning of the ADA, Defendant asserts that there is no evidence that their discharge was based on their medical conditions. Defendant maintains that Plaintiffs' positions were eliminated due to a massive cost-cutting effort at its Waterford facility. Specifically, Defendant contends that Mr. Trepanier's tool crib technician position was eliminated because its subsidiary assumed the thread die inventory tasks and SPS's Purchasing Department assumed the washer inventory tasks associated with this position. Furthermore, with regard to Mr. Bickes inventory control coordinator position, Defendant asserts that the tasks associated with this position were split between and added to the responsibilities of the warehouse

14

manager and warehouse supervisor. In addition, Defendant also argues that it implemented a number of other cost-cutting measures around its Waterford facility that did not involve a reduction of its workforce.

Plaintiffs argue that Defendant improperly used selection criteria that tended to single out individuals with a disability in violation of the ADA. *See* 42 U.S.C. 12112(b)(6). In support of their argument, Plaintiffs refer the Court to a Group Insurance Change Report listing these six individuals.[14] (Pls.' Ex. H). At the hearing, Plaintiffs argued that of the six individuals listed in the Group Insurance Change report and fired on April 29, 2004 five of them were either known to be disabled or were over the age of fifty-five. Defendants contend that a total of fourteen positions were eliminated as a result of the cost-cutting mandate. (*See* Dft.'s Ex. 11). Consequently, Plaintiffs subjective assertions that five out of fourteen individuals singled out is insufficient to create a genuine issue of fact that Defendant's proffered reasons are pretextual.

Plaintiffs provide Mr. Trepanier's deposition testimony as the sole evidence on the severity of the medical conditions of these employees. (*See* Dft.'s Ex. 2, Trepanier Dep. at 217-22). Mr. Trepanier's "subjective interpretations are insufficient as a matter of law to establish a discrimination claim." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000)(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)). Plaintiffs also argue that Kerry Downing, another employee discharged on April 29,

---

[14] However, as Defendant points out, this sheet merely identifies which employees had their life insurance coverage terminated as of April 29, 2004. (Dft.'s Ex. 4, Pawczuk Dep. at 7-10).

2004, had multiple sclerosis, which "was mentioned during the discussion to terminate him." (Pls.' Resp. Br. at 10). Jeff Bishop's testimony, however, demonstrates that Mr. Downing's medical condition was raised but was not the deciding factor in his discharge. (Dft.'s Ex. 3, Bishop Dep. at 40-41, 61-62).

Finally, Plaintiffs argue that the fact that Defendant was hiring individuals before and after Plaintiffs' positions were eliminated is also evidence of pretext. Defendant, however, has provided evidence describing, specifically, the reasoning behind each of the new hires all of whom filled positions different than those eliminated by Defendant.

Thus, Plaintiffs have not produced sufficient evidence to refute Defendant's claim that it discharged Plaintiffs due to a massive cost-cutting effort and to meet their burden of creating an issue of fact as to whether they were discharged because of their disability.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

                                           s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Matthew Wigent, Esq.
Louis Theros, Esq.
Ryan Mulally, Esq.